# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) ) ) |
| Plaintiff, | ) ) Civil Action No. 1:25-CV-590 ) |
| v. | ) Hon. Judge Neary ) ) |
| TALEN ENERGY CORPORATION AND BRUNNER ISLAND, LLC, | ) ) ) Electronically Filed ) |
| Defendants. | ) ) |

# BRIEF OF THE UTILITY SOLID WASTE ACTIVITES GROUP AS *AMICUS CURIAE*

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

REGULATORY BACKGROUND ........................................................................3

ARGUMENT ..........................................................................................................6

    I.    Impoundments closed prior to October 19, 2015, are "CCR management units," not "inactive CCR surface impoundments" .......... 6

        A.    EPA confirmed in the 2015 CCR Rule that it was not regulating and had not proposed to regulate previously closed impoundments.......................................................................... 6

        B.    In the 2024 Legacy CCR Rule, EPA categorized previously closed impoundments as CCR management units ......................... 9

    II.    CBD's position would amount to unlawful retroactive regulation of previously closed impoundments............................................................ 11

CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*Appalachian States Low-Level Radioactive Waste Comm'n v. O'Leary*,
　93 F.3d 103 (3d Cir. 1996) ...................................................................................11

*Bd. of Cnty. Cmm'rs of Weld Cnty., Colorado v. EPA*,
　72 F.4th 284 (D.C. Cir. 2023) ..............................................................................11

*Levy v. Sterling Holding Co., LLC*,
　544 F.3d 493 (3d Cir. 2008) .................................................................................11

*FCC v. Fox Television Stations, Inc.*,
　567 U.S. 239 (2012) ..............................................................................................12

*Utility Solid Waste Activities Group v. EPA*,
　901 F.3d 414 (D.C. 2018) ...................................................................................1, 5


**Federal Regulations**

40 C.F.R. §257.53 ..........................................................................................4, 5, 6, 9


**Other Authorities**

75 Fed. Reg. 35,128 (June 21, 2010) ...........................................................................9

80 Fed. Reg. 21,302 (April 17, 2015) ......................................................1, 3, 4, 8, 9

89 Fed. Reg. 38,950 (May 8, 2024) ...................................................................4, 5, 10

## INTRODUCTION

The Utility Solid Waste Activities Group ("USWAG") endorses the arguments in the brief of Defendants Talen Energy Corporation and Brunner Island, LLC (collectively, "Talen"). USWAG is participating in this case to elaborate on a specific legal issue of critical importance to this Court and our members: specifically, whether a disposal unit that was closed prior to October 19, 2015, is properly categorized as an "inactive CCR surface impoundment" or "CCR management unit" under EPA's federal coal combustion residuals ("CCR") regulations.[1]

In 2015, EPA promulgated regulations under the Resource Conservation and Recovery Act ("RCRA") governing the disposal of CCR, a byproduct of coal-fired power generation. Those regulations applied to active CCR landfills and surface impoundments and inactive CCR surface impoundments at active power plants.[2]

---

[1] No counsel for a party authored this brief in whole or in part. No party's counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than USWAG, its members, or its counsel made a monetary contribution for its preparation or submission.

[2] The 2015 CCR Rule contained a provision exempting inactive impoundments from certain requirements if they closed by a date certain. "Hazardous and Solid Waste Management System; Disposal of Coal Combustion Residuals from Electric Utilities," 80 Fed. Reg. 21,302, 21,468 (April 17, 2015) ("2015 CCR Rule"). This exclusion was ultimately challenged in court and vacated by the D.C. Circuit. *Utility Solid Waste Activities Group v. EPA*, 901 F.3d 414 (D.C. 2018).

CCR disposal units that had been closed prior to the effective date of the rule, however, were not subject to regulation.

The Center for Biological Diversity ("CBD") has brought this lawsuit against Talen for violations of the CCR regulations, claiming that an impoundment previously closed by Talen in the 1980s with subsequent review and approval by the state, is subject to the federal regulation as an "inactive CCR surface impoundment." To support this claim, CBD must rely on new definitions that EPA added to the CCR regulations in 2024. These new definitions, however, cannot apply retroactively to reclassify an entire universe of units in a way that would immediately throw such units into ten years of noncompliance. To do so violates basic principles of administrative law and due process.

USWAG's interest in this case stems from CBD's attempt to retroactively expand the scope of units regulated as "inactive CCR surface impoundments" to cover surface impoundments previously closed under state oversight. Many USWAG members own or operate facilities with closed impoundments and relied on EPA's statements that these units are not—and were never intended to be—inactive surface impoundments. Rather, these units fell outside the scope of the CCR regulations issued in 2015 and, instead, are currently treated prospectively as CCR management units, a newly regulated class of CCR unit that was introduced in the 2024 modifications to the CCR regulations.

2

## REGULATORY BACKGROUND

In 2015, EPA promulgated nonhazardous waste regulations specific to CCR disposal (the "2015 CCR Rule"). 80 Fed. Reg. 21,302. The regulations address the CCR disposal practices that EPA found posed "risks … to human health and the environment"—specifically, disposal in "existing and new CCR landfills and existing and new CCR surface impoundments." *Id.*

The 2015 CCR Rule operated prospectively, and its applicability was based on a unit's status as of the rule's effective date, October 19, 2015. Consistent with the CCR rule's prospective application, EPA made clear that it did not apply to any CCR units that closed prior to October 19, 2015, in accordance with then-existing requirements. *Id.* at 21,343. As EPA explained, the 2015 Rule did not "require 'closed' surface impoundments to 'reclose,'" acknowledging the "literally hundreds of previously closed … surface impoundments—many of which were properly closed decades ago under state solid waste programs, have changed owners, and now have structures built on top of them." *Id.*

EPA found that previously closed CCR impoundments did not present an unreasonable risk because closing the unit removes the ponded water that creates the downward pressure (the "hydraulic head") that causes the "leaching of contaminants" into groundwater. *Id.* at 21,328, 21,357. Accordingly, the 2015 CCR

3

Rule did "not impose any requirements on any CCR surface impoundments that have in fact 'closed' before the rule's effective date." *Id.* at 21,343.

In contrast to closed units, the 2015 CCR Rule applied to "inactive impoundments," or impoundments that no longer received CCR but "still contain[] both CCR and liquids on or after October 19, 2015." 40 C.F.R. §257.53. The Agency explained that, unlike closed impoundments, inactive surface impoundments closely resemble the features of active impoundments (*i.e.*, they manage large quantities of CCR under a hydraulic head) and therefore—even though not actively accepting CCR—pose similar risks as active impoundments. *See* 80 Fed. Reg. at 21,343.

The CCR rule has been updated several times since it was first promulgated in 2015. Most recently, EPA modified the regulations in 2024 to expand the scope of regulation. "Hazardous and Solid Waste Management System: Disposal of Coal Combustion Residuals from Electric Utilities; Legacy CCR Surface Impoundments," 89 Fed. Reg. 38,950 (May 8, 2024) ("2024 Legacy CCR Rule"). Finding that new information suggesting that historical disposal units—including previously closed impoundments—may continue to pose a risk to groundwater, EPA amended the CCR regulations to encompass historical placement of CCR, called "CCR management units."[3] *See id.* at 38,974, 38,980. As explained by EPA in the

---

[3] EPA also expanded the rule to cover "legacy CCR surface impoundments," or inactive CCR surface impoundments at inactive facilities. EPA was required to add

preamble, CCR management units, by definition, include units that closed prior to 2015:

> This final rule defines *CCR management unit* to mean any area of land on which any noncontainerized accumulation of CCR is received, is placed, or is otherwise managed, that is not a regulated CCR unit. This term includes inactive CCR landfills and CCR units that closed prior to October 19, 2015. EPA has also included a definition of the phrase, "closed prior to October 19, 2015," <u>which provides that the term means "the CCR landfill or surface impoundment completed closure of the unit in accordance with state law prior to October 19, 2015.</u>"

*Id.* at 39,051 (italics in original; underline added).[4]

The 2024 Legacy CCR Rule also, among other things, added a definition for the word "liquids." The current rule now defines "liquids" as "any fluid (such as water) that has no independent shape but has a definite volume and does not expand indefinitely and that is only slightly compressible." 40 C.F.R. § 257.53. The definition continues, "[t]his encompasses all of the various types of liquids that may be present in a CCR unit, including water that was sluiced into an impoundment along with CCR, precipitation, surface water, groundwater, and any other form of

---

this class of units to the CCR rule as a result of the D.C. Circuit's decision in *Utility Solid Waste Activities Group v. EPA*, 901 F.3d 414 (D.C. 2018).

[4] The regulation of CCR management units has been challenged and is currently the subject of pending litigation in *City Utilities of Springfield, Missouri v. EPA*, No. 24-1200 (D.C. Cir. 2024). Petitioners in that case have challenged EPA's authority to regulate the full scope of activities included within the definition of CCRMU and its retroactive application of standards to units previously closed under state oversight. Pet'rs' Opening Br. at 19-27, *City Utilities of Springfield, Missouri v. EPA*, No. 24-1200 (D.C. Cir. 2024) (Doc. No. 2097916).

water that has migrated into the impoundment, which may be found as free water or standing water ponded above CCR or porewater intermingled with CCR." *Id*. The 2024 Legacy CCR Rule also included the newly defined term "contains both CCR and liquids," which now means "both CCR and liquids are present in a CCR surface impoundment, except where the owner or operator demonstrates that the standard in § 257.102(d)(2)(i) has been met." *Id*. Neither of these definitions existed in the 2015 CCR Rule.

## ARGUMENT

**I.  Impoundments closed prior to October 19, 2015, are "CCR management units," not "inactive CCR surface impoundments."**

Prior to the effective date of the 2015 CCR Rule, hundreds of surface impoundments across the country closed under then-existing requirements, including under state solid waste programs. These surface impoundments are not "inactive surface impoundments," as defined in the regulations. EPA has repeatedly confirmed that it never intended for these units to be regulated as such. Instead, these closed impoundments are "CCR management units" that became subject to regulation in 2024.

**A.  EPA confirmed in the 2015 CCR Rule that it was not regulating and had not proposed to regulate previously closed impoundments.**

EPA explicitly distinguished between "closed" impoundments and "inactive" impoundments in the preamble to the 2015 CCR Rule, explaining that the former

6

were exempt from regulation and the latter would be subject to all requirements applicable to active impoundments.

The choice to regulate inactive impoundments was controversial. During the rulemaking process, several commenters questioned EPA's authority over units that were no longer actively receiving CCR and, more specifically, expressed concerns related to the retroactive application of new standards to units that had already closed. *See, e.g.*, Duke Energy, Comment Letter on Proposed 2015 CCR Rule (Nov. 19, 2010), Doc. ID EPA-HQ-RCRA-2009-0640-6398; Dominion Resources Services, Inc., Comment Letter on Proposed 2015 CCR Rule (Nov. 17, 2010), Doc. ID EPA-HQ-RCRA-2009-0640-6833; Western Business Roundtable, Comment Letter on Proposed 2015 CCR Rule (Nov. 19, 2010), Doc. ID EPA-HQ-RCRA-2009-0640-6820; Missouri Public Utility Alliance, Comment Letter on Proposed 2015 CCR Rule (Nov. 19, 2010), Doc. ID EPA-HQ-RCRA-2009-0640-6988. These commenters explained that this approach departed from the Agency's long-standing practice under RCRA to regulate disposal practices prospectively. *See, e.g.*, Western Business Roundtable, Comment Letter on Proposed 2015 CCR Rule (Nov. 19, 2010), Doc. ID EPA-HQ-RCRA-2009-0640-6820. For example, USWAG wrote:

> [EPA's proposal] would mean that literally hundreds of previously closed and inactive surface impoundments - many of which were properly closed decades ago under state solid waste programs, have changed owners, and now have structures built on top of them - would be considered active CCR disposal units and would be subject to full … regulation. EPA's position runs directly counter to existing case law

> on the definition of disposal, as well as Congress' RCRA and CERCLA statutory scheme, and would raise a host of practical and compliance issues that EPA has, itself, recognized.

USWAG, Comment Letter on Proposed 2015 CCR Rule (Nov. 19, 2010), Doc. ID EPA-HQ-RCRA-2009-0640-10483. Similarly, Prairie State Generating Company commented:

> For the first time in EPA' s thirty-year implementation of RCRA, EPA proposes to extend RCRA … jurisdiction to previously closed and/or inactive facilities. Such an approach is not only unlawful, but inconsistent with EPA's administration of the RCRA program [under which] regulations are prospective in nature and are not directed at inactive facilities.

Prairie State Generating Company, Comment Letter on Proposed 2015 CCR Rule (Nov. 19, 2010), Doc. ID EPA-HQ-RCRA-2009-0640-9239 (internal citations omitted).

EPA responded to these comments in the final rule, explaining that the commenters were inappropriately conflating "closed" and "inactive" surface impoundments, which are distinct concepts. 80 Fed. Reg. at 21,343. The Agency explained that "inactive" impoundments are those that closely resemble active impoundments due to the continued presence of a large hydraulic head. *Id.* On the other hand, it stated that it had never proposed (nor intended) to regulate units that were *closed* (*e.g.*, dewatered and capped) prior to the effective date of the 2015 CCR Rule, including the "literally hundreds of previously closed . . . surface impoundments—many of which were properly closed decades ago under state solid

8

waste programs, have changed owners, and now have structures built on top of them." *See id.* And in fact, the 2010 proposed CCR rule clearly stated that EPA was proposing to regulate only CCR impoundments that had not completed closure prior to the effective date of the regulations, noting that such units continued to have a "very large hydraulic head" and "remain open to precipitation and infiltration." Hazardous and Solid Waste Management System; Identification and Listing of Special Wastes; Disposal of Coal Combustion Residuals from Electric Utilities, 75 Fed. Reg. 35,128, 35,177 (Proposed June 21, 2010).

When the 2015 CCR Rule was issued, utilities from across the country relied on these statements from EPA to conclude that previously closed impoundments located at their facilities were exempt from regulation.

### B.  In the 2024 Legacy CCR Rule, EPA categorized previously closed impoundments as CCR management units.

The 2024 Legacy CCR Rule expanded the scope of the CCR Rule to include, for the first time, CCR surface impoundments or landfills that closed prior to the October 19, 2015, effective date of the 2015 CCR Rule. EPA did this by explicitly defining the scope of CCR management units to include impoundments, like Ash Basin 5, that had previously closed. By definition, a CCR management unit includes "CCR units that closed prior to October 19, 2015." 40 C.F.R. § 257.53. "Closed prior to October 19, 2015" is separately defined to mean "the CCR landfill or surface

9

impoundment completed closure of the unit in accordance with state law prior to October 19, 2015." *Id.*

Contrary to CBD's assertion, the presence of groundwater in a unit does not impact whether that unit was considered "closed" prior to October 19, 2015, and not regulated as an inactive impoundment. EPA's own discussion of CCR management units in the preamble to the 2024 Legacy CCR Rule confirms as much.

There are several examples throughout the rulemaking record for the 2024 Legacy CCR Rule where EPA identified a previously closed impoundment as a CCR management unit despite the potential presence of groundwater in the unit. For example, EPA identified two units at the Will County Generating Station as CCR management units: "Pond 1 North" and "Pond 1 South." EPA, Universe of CCR Management Units, Doc. ID EPA-HQ-OLEM-2020-0107-1032 (April 2024). In the preamble to the 2024 Legacy CCR Rule, EPA explicitly acknowledges that these units are in contact with groundwater. 89 Fed. Reg. at 39,042-43. And as Talen explains in its Motion to Dismiss, Ash Basin 5 at Brunner Island—the very unit at issue in this case—was also listed by EPA as a CCR management unit. Mot. to Dismiss at 8, ECF No. 25.

For the reasons stated above, the 2015 CCR Rule and 2024 CCR Legacy Rule rulemaking records demonstrate that the Agency did not intend for surface impoundments "closed" prior to the effective date of the 2015 CCR Rule to be

10

regulated as inactive surface impoundments. These units are properly considered CCR management units.

## II. CBD's position would amount to unlawful retroactive regulation of previously closed impoundments.

Central to CBD's claim that Ash Basin 5 is a non-compliant, inactive surface impoundment, is CBD's assertion that the unit contains "liquids" because portions of the closed unit are potentially saturated with groundwater. But this assertion relies on EPA's new definitions of "liquids" and "contains both CCR and liquids," which were only recently added to the CCR regulations in 2024. In other words, CBD seeks to use these new definitions to retroactively reclassify previously closed units, like Ash Basin 5, as inactive CCR surface impoundments. This retroactive reclassification must fail as a matter of law.

Retroactive rulemaking is presumptively impermissible. *Appalachian States Low-Level Radioactive Waste Comm'n v. O'Leary*, 93 F.3d 103, 113 (3d Cir. 1996). This court has held that a new rule is considered retroactive in nature when it results in a "substantive" change to the regulations. *Levy v. Sterling Holding Co., LLC*, 544 F.3d 493, 501 (3d Cir. 2008); *see also Bd. of Cnty. Cmm'rs of Weld Cnty., Colorado v. EPA*, 72 F.4th 284, 292 (D.C. Cir. 2023) ("'[a] rule operates retroactively when it 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994))). To impose

11

retroactive liability on regulated parties who lacked fair notice of new requirements violates the "fundamental principle in our legal system [] that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

Like Talen, numerous facilities reasonably relied on the plain text of the 2015 CCR Rule and EPA's accompanying preamble statements that previously closed impoundments were categorically, and in no uncertain terms, exempt from regulation. And, like Talen, these facilities have also relied on EPA's statements in the 2024 Legacy CCR Rule that such units will be prospectively regulated as CCR management units. Adopting CBD's position as articulated in its Compliant would require this Court to retroactively apply definitions that did not exist in the 2015 CCR Rule and for which no facility could possibly have had fair notice of 10 years ago.

## CONCLUSION

CBD's Complaint rests on the assertion that Ash Basin 5 is an "inactive CCR surface impoundment." It is not. Surface impoundments that closed prior to October 19, 2015, are not "inactive CCR surface impoundments" under the CCR regulations. These units, which explicitly fell outside the scope of the 2015 CCR Rule, are properly treated, prospectively, as CCR management units under the 2024 Legacy CCR Rule.

# **CERTIFICATE OF COMPLIANCE**

I, Casey Alan Coyle, hereby certify that the foregoing *amicus* brief contains 2,867 words in compliance with Local Rule 7.8(b).


Date: June 9, 2025                                                  /s/Casey Alan Coyle
                                                                              Casey Alan Coyle