## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
## AT HARRISBURG

**CENTER FOR BIOLOGICAL
DIVERSITY,**

        **Plaintiff,**

**v.**                           **Civil Action No. 1:25-cv-00590**

**TALEN ENERGY CORPORATION**     **Hon. Keli M. Neary**
**and BRUNNER ISLAND, LLC,**

        **Defendants.**

## PLAINTIFF'S BRIEF IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

James M. Hecker
Daniel C. Snyder
Haley Nicholson
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600 ext. 225
jhecker@publicjustice.net
dsnyder@publicjustice.net
hnicholson@publicjustice.net

Stephen G. Harvey
Pa. Bar No. 58233
Steve Harvey Law LLC
1880 John F. Kennedy Blvd.
Suite 1715
Philadelphia, PA 19103
(215) 438-6600

steve@steveharveylaw.com

Hannah Connor
Ragan Whitlock
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
(202) 681-1676
hconnor@biologicaldiversity.org
rwhitlock@biologicaldiversity.org

*Attorneys for Plaintiff*

## Table of Contents

Introduction ..................................................................................................... 1

I.      The 2015 CCR Rule Applies to Brunner's Ash Basin 5 .............................. 3

II.     The Center's Action Is Not Precluded by the 2019 Consent Decree............. 8

        A.      The Decree Fails the Judicial Test for Claim Preclusion
                Because It Did Not Allege or Enforce Brunner's
                Noncompliance with the 2015 CCR Rule.................................. 8

        B.      The Decree Fails the Statutory Test for RCRA Preclusion
                Because It Did Not Require Brunner to Comply with
                the 2015 CCR Rule ................................................................10

        C.      PA DEP Has Not Diligently Prosecuted Brunner's
                Noncompliance with the 2015 CCR Rule................................12

III.    The Center Satisfies the Redressability Prong of Standing Because
        It Seeks Compliance With the 2015 CCR Rule, Which Has More
        Stringent Requirements Than Those in the 2019 Consent Decree..............13

IV.     The Abstention and Primary Jurisdiction Doctrines Do Not Apply to
        Citizen Suits that Seek Compliance with RCRA Requirements .................16

Conclusion ......................................................................................................19

## Table of Authorities

**Cases**                                                           **Page(s)**

*Am. Littoral Soc'y v. Brown Printing East, Inc*.,
No. 90-5297, 1992 WL 13075 (E.D. Pa. Jan. 17, 1992) ....................................9

*Arizona v. California*,
530 U.S. 392 (2000)..........................................................................................9

*Baykeeper v. NL Indus., Inc.*,
660 F.3d 686 (3d Cir. 2011) ...........................................................................17

*Beasley v. Howard*,
14 F.4th 226 (3d Cir. 2021) ..............................................................................9

*Chico Serv. Station, Inc. v. SOL P.R. Ltd.*,
633 F.3d 20 (1st Cir. 2011).......................................................................17, 18

*Citizens Legal Env't Action Network, Inc. v. Premium Standard
Farms, Inc.*,
No. 97-6073-CV-SJ-6, 2000 WL 220464 (W.D. Mo. Feb. 23,
2000) ................................................................................................................12

*City of Hattiesburg v. Hercules, Inc.*,
No. 2:13–CV–208–KS–MTP, 2014 WL 1276459 (S.D. Miss. Mar.
27, 2014) .........................................................................................................17

*Coll. Park Holdings, LLC v. Racetrac Petroleum, Inc*.,
239 F. Supp. 2d 1322 (N.D. Ga. 2002)............................................................17

*Colo. River Water Conservation District v. United States,* 424 U.S.
800, 817 (1976) ...............................................................................................16

*Community Ass'n for Restoration of the Env't, Inc. v. George &
Margaret LLC*,
954 F. Supp. 2d 1151 (E.D. Wash. 2013).........................................................10

*DMJ Assocs., L.L.C. v. Capasso*,
228 F. Supp. 2d 223 (E.D.N.Y. 2002)..............................................................17

*Electric Energy, Inc. v. EPA*,
106 F.4th 31 (D.C. Cir. 2024)............................................................................6

*Fresh Air for the Eastside, Inc. v. Waste Mgmt. of New York, L.L.C.*,
    405 F. Supp. 3d 408 (W.D.N.Y. 2019) .................................................................. 17

*Frilling v. Vill. of Anna*,
    924 F. Supp. 821 (S.D. Ohio 1996) ..................................................................... 10

*Glazer v. Am. Ecology Env't Servs.*,
    894 F. Supp. 1029 (E.D. Tex. 1995) .................................................................... 10

*Grossmanns6 Family Real Estate LLC v. Great Lakes Synergy Corp.*,
    No. 20-CV-905, 2020 WL 6392867 (E.D. Wis. Nov. 2, 2020) ......................... 17

*Interfaith Cmty. Org. Inc. v. PPG Indus., Inc.*,
    702 F. Supp. 2d 295 (D.N.J. 2010) .......................................................... 16, 17, 19

*Kentucky Waterways All. v. Kentucky Utilities Co.*,
    905 F.3d 925 (6th Cir. 2018) ................................................................................ 17

*Merry v. Westinghouse Elec. Corp.*,
    697 F. Supp. 180 (M.D. Pa. 1988) ....................................................................... 17

*Parris v. 3M Co.*,
    595 F. Supp. 3d 1288 (N.D. Ga. 2022) ................................................................ 17

*PennEnvironment v. PPG Industries, Inc.*,
    964 F. Supp. 2d 429 (W.D. Pa. 2013) .................................................................. 17

*PMC, Inc. v. Sherwin–Williams Co.*,
    151 F.3d 610 (7th Cir. 1998) ................................................................................ 17

*Sierra Club v. SCM Corp.*,
    572 F. Supp. 828 (W.D.N.Y. 1983) ..................................................................... 13

*Sierra Club v. Tri–State Generation & Transmission Ass'n*,
    173 F.R.D. 275 (D. Colo. 1997) .......................................................................... 17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .............................................................................................. 16

*Util. Solid Waste Activities Grp. v. EPA*,
    901 F.3d 414 (D.C. Cir. 2018) ............................................................................... 5

*Williams v. Alabama Dep't of Transp.*,
119 F. Supp. 2d 1249 (M.D. Ala. 2000) ....................................................17, 18

*Wilson v. Amoco Corp.*,
989 F. Supp. 1159 (D. Wyo. 1998) ......................................................17

**Statutes**

28 U.S.C. § 1331 ...........................................................................................8

33 U.S.C. § 1365 ...........................................................................................8

42 U.S.C. § 6972(a)(1)(A) .........................................................................18

42 U.S.C. § 6972(b)(1)(B) ............................................................10, 12, 18

**Regulations**

40 C.F.R. § 257.53 .....................................................................................3, 4

40 C.F.R. § 257.83 ......................................................................................14

40 C.F.R. §§ 257.90–257.98 ......................................................................11

40 C.F.R. § 257.91–95 ...............................................................................14

40 C.F.R. §§ 257.96–98 .........................................................................14, 15

40 C.F.R. § 257.107 ....................................................................................15

80 Fed. Reg. 21,302 (April 17, 2015) ..........................1, 4, 5, 11, 13, 14

90 Fed. Reg. 4635 (Jan. 16, 2025) ..............................................................7

90 Fed. Reg. 13,084 (Mar. 20, 2025) ..........................................................7

25 Pa. Code Chapters 287–89 ....................................................................11

25 Pa. Code § 287.1 ....................................................................................15

25 Pa. Code § 289.261–289.267 ................................................................11

**Introduction**

In their motion to dismiss, Defendants Talen Energy Corporation and Brunner Island, LLC (collectively "Brunner") make five arguments, all of which are misplaced.

First, Brunner incorrectly claims that the U.S. Environmental Protection Agency's ("EPA's") 2015 Coal Combustion Residuals ("CCR") Rule does not apply to Ash Basin 5 because it is a "closed" impoundment to which no additional obligations attach under the Rule. But that Rule does not contain a blanket exemption for closed impoundments. Instead, EPA stated in 2015 that closed impoundments are only exempt if, unlike Ash Basin 5, they "no longer contain water and can no longer impound liquids." 80 Fed. Reg. 21,302, 21,343 (April 17, 2015). EPA made that interpretation contemporaneously with its issuance of the Rule and that interpretation has remained intact since, so there is no retroactive application.

Second, Brunner argues that a 2019 Consent Decree ("Decree") with the Pennsylvania Department of Environmental Protection ("PA DEP") precludes the Center for Biological Diversity's (the "Center") claim under the Resource Conservation and Recovery Act ("RCRA") that Brunner is violating the 2015 CCR Rule. By its terms, however, that Decree only resolved PA DEP's claims under the

federal Clean Water Act ("CWA") and two state laws. PA DEP did not allege, and the Decree did not enforce, Brunner's noncompliance with the 2015 CCR Rule.

Third, Brunner's argument that PA DEP diligently prosecuted the Center's RCRA claim in that Decree rings hollow for similar reasons. Namely, the Decree did not enforce the 2015 CCR Rule or prosecute the same violations that the Center has alleged in this case.

Fourth, Brunner incorrectly claims that the Center cannot satisfy the redressability prong of standing because the Decree requires the same groundwater monitoring, corrective action, and reporting that the Center is requesting under the Rule. However, the Rule, as well as the relief requested by Plaintiff, imposes much more stringent requirements than those in the Decree, and the Center is entitled to seek that additional relief. For example, the Rule requires reporting to be made on a public website and the Decree does not.

Fifth, the abstention and primary jurisdiction doctrines do not apply to citizen suits that seek to compel compliance with RCRA requirements. Otherwise, defendants could make an end run around the specific conditions that Congress set for bringing such suits. There is no risk of federal-state conflicts because RCRA and the 2015 CCR Rule establish minimum federal requirements that all States must follow for managing solid waste.

## I.    The 2015 CCR Rule Applies to Brunner's Ash Basin 5.

Brunner argues that Ash Basin 5 is neither an active nor inactive CCR surface impoundment within the meaning of the 2015 CCR Rule. ECF No. 26 ("Mem.") at 12. EPA defined an inactive CCR surface impoundment as "a CCR surface impoundment that no longer receives CCR on or after October 14, 2015 and still contains both CCR and liquids on or after October 14, 2015." 40 C.F.R. § 257.53.

Brunner admits that Ash Basin 5 is a CCR surface impoundment, that it received CCR until 1987, *i.e.*, it is no longer active, and that it still contains CCR. Mem. at 4, 5. The 2019 Consent Decree supports these same findings. Ex.[1] 1, 2019 Consent Decree, ¶¶ E, F. Brunner also agrees that, for purposes of ruling on its motion to dismiss, the Court must accept as true the Center's factual allegations that Ash Basin 5 is unlined and that the lower 15 feet of CCR in Ash Basin 5 are "saturated" with groundwater and that "the groundwater elevation is within the ash material of closed Basin 5." Mem. at 4 n.3; ECF No. 1 ("Complaint"), ¶¶ 34, 35.

---

[1] Submitted herewith is the Declaration of Daniel C. Snyder, which establishes that Exhibits 1 and 4 are true and correct copies of, respectively, the 2019 Consent Decree entered in *Lower Susquehanna Riverkeeper Association et al. v. Talen Energy Corporation et al.*, 1:19-cv-01324-CCC and *Commonwealth of Pennsylvania v. Talen Energy Corporation et al.*, 1:19-cv-01329-JEJ and the "Quarterly Groundwater Report: 1st Quarter 2025 Basin 5, Disposal Area 8, and Pyrite Tomb Area Brunner Island, LLC" dated March 4, 2025. The other exhibits are copies of cases from Westlaw.

3

Finally, Brunner does not dispute that the facility at issue is an "active facility." Thus, the only issue for the Court to decide is whether Ash Basin 5 meets the definition of an "inactive" CCR surface impoundment, therefore subjecting it to the obligations of the 2015 Rule. As described further below, it does.

Brunner's exemption argument relies entirely on a single sentence in EPA's preamble to the Rule. Brunner cites and quotes that sentence twice. Mem. at 6, 13. The Center agrees with Brunner that this sentence is important and is dispositive of the exemption issue; however, Brunner truncated, and therefore fundamentally changed, the meaning of the sentence. The full sentence is:

> [T]he final rule does not impose any requirements on any CCR surface impoundments that have in fact 'closed' before the rule's effective date—*i.e., those that no longer contain water and can no longer impound liquid.*

80 Fed. Reg. at 21,343 (emphasis added). EPA's use of quotes around the word "closed" shows that EPA gave that word a special meaning—a meaning that Brunner deliberately omitted from its brief.

Specifically, per that sentence, a CCR surface impoundment only meets the technical definition of "closed," and is thus only exempt from the Rule, if it meets two conditions: (1) it no longer contains water and (2) it can no longer impound any liquid. Conversely, if it contains water or can impound liquid, it is covered by the Rule. That interpretation is consistent with EPA's language in § 257.53 which defines a covered inactive CCR surface impoundment as one that "still contains

both CCR and liquids on or after October 14, 2015." It is also supported by EPA's

contemporaneous December 2014 Fact Sheet, which stated:[2]

> The rule also deals with surface impoundments that have ceased
> receiving waste by the effective date of the rule ("inactive units").
> Those units, *if they have water and contain CCRs*, still pose a risk,
> especially of structural failure. If these units complete closure (*that is
> dewater* and a final cover) within three years of the publication of this
> rule, then they are not subject to any additional requirements under the
> rule.

Thus, the *sine qua non* of rule applicability is the combined presence of CCR and

water and/or impounded liquid, not whether the regulated entity deems the unit to

be closed. Since a unit that contains CCR and water is not considered properly

closed or exempted, and Ash Basin 5 still contains and impounds CCR and liquid

(*i.e.* groundwater), it is subject to the 2015 CCR Rule.[3]

Brunner's argument that groundwater is not a liquid and interpreting it to be

a liquid would be an improper retroactive application of the 2024 CCR rule is

incorrect. First, regardless of whether groundwater is a liquid, groundwater

unquestionably contains water. In 2015, EPA interpreted the Rule to mean that an

---

[2] *See* Fact Sheet: Final Rule on Coal Combustion Residuals Generated by Electric
Utilities at 2, *available at* https://www.epa.gov/sites/default/files/2014-
12/documents/factsheet_ccrfinal_2.pdf (emphasis added).
[3] EPA's 2015 rule and interpretation are reasonable because "older, unlined
impoundments[] . . . pose 'the greatest risks to human health and the environment,'
80 Fed. Reg. at 21,451." *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414,
434 (D.C. Cir. 2018). "EPA persuasively explains that inactive sites often pose
even greater health risks given their age and accompanying deterioration." *Id.* at
442.

inactive CCR surface impoundment that "contain[ed] water" in 2015 is not

properly "closed" and therefore is covered by the Rule. 80 Fed. Reg. at 21,343. As

a result, the 2024 CCR Rule is irrelevant—which is why the Complaint is based

exclusively on the 2015 CCR Rule. Complaint at ¶ 24. The 2015 CCR Rule

provides the rule of decision, there is no retroactivity, and Brunner's argument fails

on that basis alone.

Second, the D.C. Circuit recently rejected Brunner's "groundwater is not

liquid" argument in *Electric Energy, Inc. v. EPA*, 106 F.4th 31 (D.C. Cir. 2024). In

that case, the court of appeals concluded that it is "clear from the text of the 2015

Rule" that it "requires unit operators closing surface impoundments with waste in

place to eliminate 'free liquids'" and that a "unit operator closing a surface

impoundment with waste saturated feet-deep in groundwater has neither eliminated

'free liquids' from the impoundment nor controlled the 'infiltration of liquids' into

that unit." *Id.* at 40–41. Furthermore, the court rejected the argument that its

holding required a retroactive application of documents EPA issued in 2022. "The

2015 Rule, standing on its own, makes clear that operators cannot close their

surface impoundments with groundwater leaching in and out of the unit and

mixing with the coal residuals." *Id.* at 41.[4]

---

[4] This holding also implicitly rejects amicus' argument that the Center's "groundwater is a liquid" argument depends on retroactive application of EPA's new definition of "liquids" in the 2024 CCR Rule. ECF No. 35 at 11.

6

Finally, Brunner makes the strawman argument that the 2024 CCR Rule cannot be retroactively applied to Ash Basin 5. Mem. at 13–15. That argument is inconsistent with Brunner's admission that the Center "does not" allege a violation of the 2024 Rule. *Id.* at 13. Nor is the Center relying on that Rule for its interpretation of the 2015 CCR Rule. The 2015 CCR Rule is the basis of the Center's claim.

Brunner asserts that there would be a conflict between the 2015 and 2024 Rules if Brunner had to comply with the 2015 Rule. Mem. at 15–16. Brunner contends that Ash Basin 5 cannot be both an inactive CCR surface impoundment under the 2015 Rule and a CCR management unit under the 2024 Rule. *Id.* at 10, 13–16. The two categories are not necessarily exclusive, however, and Brunner does not show that they are. In any event, this argument raises an irrelevant issue about how EPA is going to define and classify CCR surface impoundments under the 2024 Rule. *See* 90 Fed. Reg. 4635, 4638–40, 4642 (Jan. 16, 2025); 90 Fed. Reg. 13,084 (Mar. 20, 2025). The Court need not decide that issue because the only issue in this case is the status of Ash Basin 5 under the 2015 CCR Rule. That Rule is final and enforceable. The status of Ash Basin 5 under the 2024 CCR Rule or any future regulatory modifications is immaterial since the Center is not seeking to enforce that Rule.

Brunner is required to comply with the 2015 Rule. Brunner has not shown that any applicable provision in the 2024 Rule overrides or supersedes the 2015 Rule for Ash Basin 5. In this situation, the Court must order compliance with the 2015 requirements that are applicable and in effect.

## II.    The Center's Action Is Not Precluded by the 2019 Consent Decree.

Brunner raises three types of preclusion arguments—judicial claim preclusion, statutory preclusion under RCRA, and diligent prosecution under RCRA. None are applicable here.

### A.    The Decree Fails the Test for Judicial Claim Preclusion Because It Did Not Allege or Enforce Brunner's Noncompliance with the 2015 CCR Rule.

Brunner argues that the Decree precludes this action. Mem. at 3. But that Decree only resolved PA DEP's claims under the federal Clean Water Act ("CWA") and two state laws—Pennsylvania's Solid Waste Management Act and Clean Streams Law. Decree, ¶¶ B, G. The Decree defined "Applicable Environmental Laws" to be only those three laws, *not RCRA. Id.*, Part VII. The Decree did not invoke jurisdiction under RCRA and instead only relied on federal question jurisdiction under 28 U.S.C. § 1331 and CWA jurisdiction under 33 U.S.C. § 1365. *Id.*, ¶ 1.

PA DEP's enumeration of its claims in the Decree did not include the claim that Brunner had violated the 2015 CCR Rule. Decree, ¶ B. The Decree did not

8

require Brunner to comply with that Rule. Instead, PA DEP reserved its rights to enforce RCRA by preserving its ability "to address violations of, or to compel Defendants' compliance with any federal . . . law or regulation." *Id.*, ¶ 5.

The Decree mentions RCRA in only two paragraphs, in which the three citizen plaintiffs waived and released their claims under RCRA and the 2015 CCR Rule. *Id.*, ¶¶ 6, 52. The Center was not one of those citizen plaintiffs and is not in privity with or bound by their actions. Because those three plaintiffs did not enforce the Rule and Brunner is still in noncompliance, the Center is not precluded from bringing a second citizen suit. *See Am. Littoral Soc'y v. Brown Printing East, Inc.*, No. 90-5297, 1992 WL 13075, at *2, 6-7 (E.D. Pa. Jan. 17, 1992) (Ex. 2) (allowing a second citizen suit to proceed against the same defendant after a prior citizen suit by a different group did not result in compliance).

"When a defendant seeks to invoke claim preclusion based on a federal tribunal's judgment, we require '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *Beasley v. Howard*, 14 F.4th 226, 232 (3d Cir. 2021). Because the parties and claims in the Decree are not the same as the parties and claims in this case, there is no claim preclusion.[5]

---

[5] "Federal issue preclusion is a narrower doctrine than claim preclusion and prevents 'a party from relitigating an issue actually decided in a prior case and necessary to the judgment.'" *Beasley*, 14 F.4th at 236. Issue preclusion does not

**B.      The Decree Fails the Test for Statutory Preclusion Under RCRA Because It Did Not Require Brunner to Comply with the 2015 CCR Rule.**

The Decree also fails the statutory test for preclusion under RCRA. A citizen suit is barred if either EPA or a State "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with [the same] . . . [RCRA] regulation . . ." 42 U.S.C. § 6972(b)(1)(B). Thus, to be preclusive, the government action must be one "to require compliance with" the same requirements of RCRA as those alleged to have been violated in the citizen suit. *Glazer v. Am. Ecology Env't Servs.*, 894 F. Supp. 1029, 1035 (E.D. Tex. 1995); *Frilling v. Vill. of Anna*, 924 F. Supp. 821, 836 (S.D. Ohio 1996).

The Center's claim is not prohibited by RCRA's diligent prosecution bar because the prior government action did not enforce compliance with RCRA. More specifically, the Decree has no preclusive effect because it did not require Brunner to comply with the 2015 CCR Rule for Ash Basin 5. "[R]elief may be available when a government plan does not address the same substance or activity, or where there is 'ample room for injunctive relief beyond [the agency's] efforts.'"

---

apply to consent decrees. *Arizona v. California*, 530 U.S. 392, 414 (2000) ("consent judgments ordinarily support claim preclusion but not issue preclusion [i.e., collateral estoppel]."). Even if it did, the issue raised in this case was not actually decided by the 2019 Decree.

10

*Community Ass'n for Restoration of the Env't, Inc. v. George & Margaret LLC*, 954 F. Supp. 2d 1151, 1160–63 (E.D. Wash. 2013) (internal citation omitted).

Brunner argues that the Decree enforced Pennsylvania's Residual Waste Regulations and that those regulations are RCRA requirements. Mem. at 19. However, PA DEP's complaint did not contain a RCRA claim, and its state regulations do not incorporate the requirements in the 2015 CCR Rule. *See* 25 Pa. Code Chapters 287–89. Pennsylvania's requirements for groundwater monitoring and corrective action at surface impoundments are much weaker than the requirements in the 2015 CCR Rule. *Compare* 25 Pa. Code § 289.261–289.267 *with* 40 C.F.R. §§ 257.90–257.98.

When it issued the 2015 CCR Rule, EPA stated that "significant gaps remain in many state [RCRA] programs." 80 Fed. Reg. at 21,324. Although EPA was unable "to draw conclusions on the overall adequacy of state programs, the high degree of variation across state programs strongly supports the need for federal requirements to establish a consistent national standard of groundwater and human health protection." *Id.* at 21,326. EPA therefore decided that the 2015 CCR regulations "constitute the minimum federal requirements which apply to CCR units." *Id.* at 21,465. "States are not required to adopt these regulations or to revise their state programs to incorporate the new federal requirements." *Id.* In short, Pennsylvania's RCRA regulations are not a substitute for, nor are they equivalent

11

to, the federal CCR regulations. The Decree therefore does not preclude the

Center's enforcement of the 2015 CCR Rule.

### C.    PA DEP Has Not Diligently Prosecuted Brunner's Noncompliance with the 2015 CCR Rule.

As noted above, RCRA provides that a citizen suit is barred if a State is

"diligently prosecuting a civil or criminal action in a court of the United States . . .

to require compliance with [the same] . . . [RCRA] regulation . . ." 42 U.S.C. §

6972(b)(1)(B). Brunner argues that through the Decree, PA DEP has diligently

prosecuted the same conduct in federal court. Mem. at 19–20. However, as shown

above, PA DEP has not enforced or required compliance with the 2015 CCR Rule

at all. As to the RCRA violations alleged in this case, the Decree therefore

"evidences no prosecution at all, much less a diligent one." *Citizens Legal Env't*

*Action Network, Inc. v. Premium Standard Farms, Inc.*, No. 97-6073-CV-SJ-6,

2000 WL 220464, at *13 (W.D. Mo. Feb. 23, 2000) (Ex. 3).

Furthermore, nothing that has occurred since the Decree was entered

changes that conclusion. Specifically, since entry of that non-RCRA Decree, PA

DEP has taken no steps to diligently prosecute Brunner's continuing violations of

the 2015 CCR Rule or applicable groundwater standards at Ash Basin 5 and has

done nothing to stop those violations. PA DEP has been inactive despite the fact

that Brunner's March 2024 monitoring "report shows that, in the first quarter of

2024, there were exceedances of state regulatory criteria for several pollutants,

including lithium, aluminum, arsenic, molybdenum, and manganese, in the groundwater in several downgradient monitoring wells." Complaint, ¶ 37. The elevated arsenic in two downgradient wells exceeded the primary drinking water standard by a factor of 10 or more, and Brunner's groundwater consultant confirmed that Ash Basin 5 is the source of arsenic identified in those wells. *Id.*, ¶ 38. An agency's inaction "fail[s] the test of diligent prosecution" if "it permits new and independent pollution law violations to occur." *See Sierra Club v. SCM Corp.*, 572 F. Supp. 828, 831 n.3 (W.D.N.Y. 1983). Here, PA DEP's prosecution is not diligent because it has allowed Rule violations and related groundwater violations to continue unabated from 2019 to the present.

III.    **The Center Satisfies the Redressability Prong of Standing Because It Seeks Compliance With the 2015 CCR Rule, Which Has More Stringent Requirements Than Those in the 2019 Consent Decree.**

Brunner argues that the Decree provides the same relief that the Center seeks in this case and therefore cannot show the redressability needed for standing. Mem. at 16–18. That argument is wrong. A cursory analysis of the two documents shows that the Rule is more stringent and detailed than the Decree in almost every respect. The Decree also does not cite, incorporate, or even mention the Rule's requirements.

The Rule requires the owner or operator of a CCR unit to install a system of upgradient and downgradient monitoring wells. 80 Fed. Reg. at 21397. It

13

establishes a phased groundwater monitoring program. In the first phase, called
"detection monitoring," specified parameters are monitored to determine whether a
statistically significant increases in hazardous constituents have occurred. *Id.* If
they have, a second more comprehensive phase of assessment monitoring with
additional parameters is required. *Id.* If those parameters indicate a statistically
significant level exceeding groundwater protection standards, the owner must start
the cleanup process. *Id.* The assessment of corrective action remedies must start
within 90 days and then be completed within 90 days thereafter. *Id.*

The Decree is far less stringent. It requires visual inspections for seeps.
Decree, ¶¶ 9–10. In contrast, the Rule requires a professional engineer to inspect
periodically the entire design, construction, operation, and maintenance of the unit.
40 C.F.R. § 257.83. Both the Decree and the Rule require groundwater monitoring,
but the Rule's specifications for installing wells, sampling groundwater, and
analyzing results are far more detailed and demanding. *Compare* Decree ¶¶ 31–32
(272 words) *with* 40 C.F.R. § 257.91–95 (4,480 words).

The Decree's correction action requirements are a meager 369 words, while
the Rule's corrective action requirements encompass 1,844 words. *Compare*
Decree, ¶¶ 28–31 *with* 40 C.F.R. §§ 257.96–98. The Rule requires monitoring and
corrective actions to be certified by independent qualified professional engineers.
*Id.* at 21335. The Decree does not. The Rule establishes specific timeframes by

14

which each monitoring and corrective action must occur, including technical compliance demonstrations, certifications of their technical accuracy and veracity, notifications to State Directors, submittals of documentation to the operating record, and postings to a public website. *Id.* The deadline for posting the certification of the groundwater monitoring system to the public website was May 17, 2019.[6] The deadline for posting the initial annual groundwater monitoring and corrective action report was September 3, 2019. *Id.*

In contrast, the Decree requires Brunner to submit a work plan for additional assessment and abatement actions, collect 12 quarters of groundwater monitoring data, submit a groundwater evaluation report and, if the report shows "groundwater degradation" as defined at 25 Pa. Code § 287.1, submit and implement a follow-up abatement plan. Decree at ¶ 31. The groundwater evaluation report is scheduled for "approximately June 2027." Ex. 4, "Talen Energy, Groundwater Monitoring Report, 1st Quarter 2025, Basin 5," p. 2. That is far later than the Rule requires.

The most obvious difference between the Decree and the Rule relates to reporting requirements. The Decree does not require Brunner to post its groundwater sampling results and reports on a public website. In contrast, the Rule requires Brunner to "maintain a publicly accessible Internet site" containing over 50 listed items of information, reports, plans, certifications, groundwater

---

[6] *See* https://www.epa.gov/sites/default/files/2019-05/documents/placeholder.pdf.

15

monitoring, notifications, and demonstrations. 40 C.F.R. § 257.107. Brunner

maintains a website called CCR Rule Compliance Data and Information for its

Brunner Island plant, but that site only covers Ash Basin 6 and Disposal Area 8. It

contains no information at all about Ash Basin 5.[7]

Thus, the Court maintains significant remedial latitude and the Center's

injuries related to alleged violations of the 2015 CCR Rule are likely to be

redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330,

338 (2016).

## IV.  The Abstention and Primary Jurisdiction Doctrines Do Not Apply to Citizen Suits that Seek Compliance with RCRA Requirements.

Citing *Colo. River Water Conservation District v. United States,* 424 U.S.

800, 817 (1976), Brunner argues that this Court should abstain from exercising

jurisdiction over this case because PA DEP is overseeing Brunner's operations at

Ash Basin 5 pursuant to the Decree. Mem. at 20. *Colorado River* abstention is

inapplicable, however, because it only applies when there are parallel state court

proceedings. *Interfaith Cmty. Org. Inc. v. PPG Indus., Inc.,* 702 F. Supp. 2d 295,

307 (D.N.J. 2010). Here there are none. The Decree is in federal court and this case

is controlled by federal law. "Because federal courts have exclusive jurisdiction

---

[7] *See* https://www.talenenergy.com/ccr-brunner-island/.

over RCRA actions, the first requirement of the *Colorado River* doctrine—that there be a parallel state proceeding—is not satisfied." *Id.*

Brunner's primary jurisdiction argument is equally unavailing. Mem. at 20–21. In the context of RCRA citizen suits, the doctrines of abstention and primary jurisdiction are merely "different labels for the same thing." *PMC, Inc. v. Sherwin–Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998). Four federal circuits, including the Third Circuit, and many district courts, including two in this Circuit, have held that the abstention and primary jurisdiction doctrines do not apply to RCRA citizen suits that seek to compel compliance with RCRA requirements.[8] Invoking those doctrines "would be an end run around RCRA" because "Congress has *specified*

---

[8] *Kentucky Waterways All. v. Kentucky Utilities Co.*, 905 F.3d 925, 939–40 (6th Cir. 2018); *Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011); *Chico Serv. Station, Inc. v. SOL P.R. Ltd.*, 633 F.3d 20, 30–34 (1st Cir. 2011); *PMC,* 151 F.3d at 619; *Parris v. 3M Co.*, 595 F. Supp. 3d 1288, 1312 (N.D. Ga. 2022); *Grossmanns6 Family Real Estate LLC v. Great Lakes Synergy Corp.*, No. 20-CV-905, 2020 WL 6392867, at *7 (E.D. Wis. Nov. 2, 2020) (Ex. 5); *Fresh Air for the Eastside, Inc. v. Waste Mgmt. of New York, L.L.C.*, 405 F. Supp. 3d 408, 429 (W.D.N.Y. 2019); *City of Hattiesburg v. Hercules, Inc.*, No. 2:13–CV–208–KS–MTP, 2014 WL 1276459, at *3 (S.D. Miss. Mar. 27, 2014) (Ex. 6); *PennEnvironment v. PPG Industries, Inc*., 964 F. Supp. 2d 429, 453 (W.D. Pa. 2013); *Interfaith Cmty. Org., Inc.*, 702 F. Supp. 2d at 311–12; *DMJ Assocs., L.L.C. v. Capasso*, 228 F. Supp. 2d 223, 229–30 (E.D.N.Y. 2002); *Coll. Park Holdings, LLC v. Racetrac Petroleum, Inc*., 239 F. Supp. 2d 1322, 1327–28 (N.D. Ga. 2002); *Williams v. Alabama Dep't of Transp.*, 119 F. Supp. 2d 1249, 1255–56 (M.D. Ala. 2000); *Wilson v. Amoco Corp.*, 989 F. Supp. 1159, 1170 (D. Wyo. 1998); *Sierra Club v. Tri–State Generation & Transmission Ass'n*, 173 F.R.D. 275, 284 (D. Colo. 1997); *Merry v. Westinghouse Elec. Corp.*, 697 F. Supp. 180, 183 (M.D. Pa. 1988).

the conditions under which the pendency of other proceedings bars suit under RCRA." *PMC*, 151 F.3d at 619 (emphasis in original). Those conditions—a pre-suit notice, a 60-day waiting period, and lack of diligent prosecution of the same violations by EPA or a State—are satisfied here. 42 U.S.C. § 6972(a)(1)(A), (b)(1)(B); Complaint, ¶¶ 15–16. As the court stated in *DMJ Associates,* 228 F. Supp. 2d at 229–30:

> By authorizing citizens to file private lawsuits under RCRA and narrowly defining the conditions under which state or federal action can circumscribe that right, Congress clearly signaled that the federal courts have a duty to hear and decide these claims and carefully limited the deference courts should pay to the expertise of an administrative agency.

In addition, there is no risk of conflicting obligations or relief because, under RCRA, "state and federal environmental protection agencies operate as part of the same regulatory scheme." *Williams*, 119 F. Supp. 2d at 1257. Indeed, at no point does Brunner identify any conflicting obligations between the Decree and implementation of the 2015 CCR Rule. "Absent some special waiver that is not alleged to exist, [a State's] waste disposal policies can receive EPA approval only if they are equivalent to, or more stringent than the EPA's. Put another way, [a State] may not allow [a waste handler] to remain in less than full compliance with the EPA's RCRA requirements." *Id.*

"In enacting RCRA, Congress made an express determination that a coherent national policy was necessary to address the serious, jurisdiction-

18

spanning problems of solid and hazardous waste, thereby inherently privileging the

consistency of federal regulation over local control." *Chico*, 633 F.3d at 33. As the

First Circuit explained:

> By design, RCRA interferes with a state's efforts to establish its own
> policy with respect to hazardous waste, both in subjecting state
> regulations to federal review and in mandating that they adhere to a
> federal framework. It would fly in the face of Congress's
> unmistakable attention to the coherency of national policy for a
> federal court to defer to a local agency.

*Id.* As a result, a "RCRA suit may exist in spite of other actions having been taken

to resolve the same matter." *Interfaith*, 702 F. Supp. 2d at 315.

### Conclusion

For the foregoing reasons, Brunner's motion to dismiss should be denied.

Respectfully submitted,

s/ Stephen G. Harvey                                    James M. Hecker
Stephen G. Harvey (PA No. 58233)          Daniel C. Snyder
Steve Harvey Law LLC                              Haley Nicholson
1880 John F. Kennedy Blvd.                       PUBLIC JUSTICE
Suite 1715                                                  1620 L Street NW, Suite 630
Philadelphia, PA 19103                              Washington, DC 20036
(215) 438-6600                                           (202) 797-8600 ext. 225
steve@steveharveylaw.com                        jhecker@publicjustice.net
                                                               dsnyder@publicjustice.net
Hannah Connor                                         hnicholson@publicjustice.net
Ragan Whitlock
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
(202) 681-1676
hconnor@biologicaldiversity.org
rwhitlock@biologicaldiversity.org                *Attorneys for Plaintiff*

19

## Certificate of Compliance with Local Rule 7.8(b)

Pursuant to Local Rule 7.8(b), I hereby certify that Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss falls below the 5,000-word limit, totaling 4,585 words.

Dated: June 16, 2025          /s/ Stephen G. Harvey

## Certificate of Service

I certify that on June 16, 2025, I served a copy of the foregoing document via the Court's ECF system on the following:

> Bonnie A. Barnett
> FAEGRE DRINKER BIDDLE
> & REATH LLP
> One Logan Square, Suite 2000
> Philadelphia, Pennsylvania 19103
> (215) 988-2916
> bonnie.barnett@faegredrinker.com
>
> Brooks M. Smith
> TROUTMAN PEPPER LOCKE LLP
> 1001 Haxall Point, Suite 1500
> Richmond, VA 23219
> brooks.smith@troutman.com
>
> Lindsey B. Mann
> TROUTMAN PEPPER LOCKE LLP
> 600 Peachtree Street, NE, Suite 3000
> Atlanta, GA 30308
> lindsey.mann@troutman.com
>
> /s/ Stephen G. Harvey

20